■ In the Matter of the Claim of Rocio Zamora, Appellant, v New York Neurologic Associates et al., Respondents. Workers' Compensation Board, Respondent. [912 NYS2d 816]—

Spain, J. Appeal from a decision of the Workers' Compensation Board, filed March 13, 2009, which, among other things, denied claimant's claim for workers' compensation benefits.

In 2003, claimant, a phlebotomist, was injured at work when she was struck by a falling computer monitor. She applied for and received workers' compensation benefits, and was ultimately

found to suffer from a permanent partial disability. Claimant left her employment in 2007, leading the employer and its workers' compensation carrier (hereinafter collectively referred to as the employer) to question whether she had voluntarily withdrawn from the labor market. After a hearing, a workers' compensation law judge concluded that she had not. Upon review, the Workers' Compensation Board agreed, but held that her subsequent efforts to find work were insufficient to establish an attachment to the labor market and suspended benefits as of August 2008. Claimant now appeals.

We reverse. The parties do not take issue with the Board's finding that claimant did not voluntarily withdraw from the workforce when she left her job in 2007. Accordingly, an inference arose that claimant's subsequent loss of wages was attributable to her disability, and it was incumbent upon the employer "to rebut the inference of causation or prove that the reduction in employment was solely due to factors unrelated to the disability" (*Matter of Johnson v Onondaga Heating & A.C.*, 301 AD2d 903, 905 [2003]; *see Matter of Dudlo v Polytherm Plastics*, 125 AD2d 792, 793 [1986]). This inference arises regardless of whether the Board's finding of involuntary withdrawal from the labor market was caused by retirement or, as here, simply a failure to return to work (*see Matter of Laing v Maryhaven Ctr. of Hope*, 39 AD3d 1125, 1126 [2007], *lv denied* 9 NY3d 805 [2007]; *Matter of Louman v Premier Staffing, LLC*, 12 AD3d 815, 816 [2004]; *Matter of Johnson v Onondaga Heating & A.C.*, 301 AD2d at 904-905).

While a claimant's failure to look for work may be relevant in challenging a claimant's continued right to benefits in these situations, such evidence, standing alone, is insufficient to rebut the inference (*see Matter of Laing v Maryhaven Ctr. of Hope*, 39 AD3d at 1126; *Matter of Bryant v New York City Tr. Auth.*, 31 AD3d 936, 938 [2006]; *Matter of Tipping v National Surface Cleaning Mgt., Inc.*, 29 AD3d 1200, 1200-1201 [2006]; *Matter of Pepe v City & Suburban*, 29 AD3d 1184, 1185-1186 [2006]). Indeed, the employer must show "that the failure to seek employment was the *sole* cause of the subsequent reduction" (*Matter of Pittman v ABM Indus., Inc.*, 24 AD3d 1056, 1058 [2005] [emphasis added]; *see Matter of Tipping v National Surface Cleaning Mgt., Inc.*, 29 AD3d at 1200-1201). Here, claimant not only sought work after leaving employment but found it on two occasions, only to discover that her disability prevented her from performing her new duties. As the employer produced nothing to show that any inadequacies in claimant's job search were the sole cause of her continued unemployment,

substantial evidence does not support the Board's determination.

Mercure and Lahtinen, JJ., concur.

Cardona, P.J. (dissenting). Respectfully, we dissent. In our opinion, there is a distinction between those cases where a claimant has involuntarily retired and other cases where a claimant has involuntarily withdrawn from the labor market, but has not retired. That distinction centers on when the inference that the claimant's subsequent loss of wages was attributable to his or her disability applies. It is important to note that, where, as here, "a claimant has a permanent partial disability but there has been no finding of involuntary retirement, the claimant has an obligation to demonstrate attachment to the labor market with evidence of a search for employment within medical restrictions" (*Matter of Peck v James Sq. Nursing Home*, 34 AD3d 1033, 1034 [2006]; *see Matter of Stevenson v Sunoco Flexible Packaging*, 43 AD3d 1260, 1261 [2007]; *see e.g. Matter of Johnson v Onondaga Heating & A.C.*, 301 AD2d 903, 905 [2003]). In our view, only after the non-retired claimant has met that burden does the inference arise that the subsequent loss of or reduction in wages, if any, was caused by the permanent partial disability. To hold otherwise would mean, for practical purposes, that a claimant with a permanent partial disability who has involuntarily withdrawn from his or her particular employment but has not retired from the work force has no obligation to minimize the loss or reduction in earnings by searching for work within their medical limitations, and results in an unfettered entitlement to compensation. Accordingly, inasmuch as the record herein does not establish that claimant remained attached to the labor market by searching for employment within her medical restrictions, we would affirm the decision of the Workers' Compensation Board.

Garry, J., concurs. Ordered that the decision is reversed, with costs, and matter remitted to the Workers' Compensation Board for further proceedings not inconsistent with this Court's decision.